### W. T. WATSON v. THE STATE.
#### No. 126. Decided April 22.

1. **Aiding Prisoners to Escape — Conveying Means into Jail — Evidence— Charge of the Court.**—On a trial for aiding prisoners charged with felony to escape, after it had been proved that defendant conveyed two bottles of muriatic and nitric acid into the jail, the State, over his objections, was further allowed to prove that a week thereafter a steel spring was found in the jail, and cuts were discovered on the iron and steel bars of the cells. *Held*, the evidence was admissible to show the intent of the prisoner to effect an escape, and could not have injured the defendant, where the purpose of the testimony was limited and restricted solely to that object by the charge of the court.

2. **Expert Evidence—Contents of Bottles.**—A witness who has qualified himself as a pharmacist, may testify as to the contents of bottles, and satisfy himself of their contents by practical tests.

3. **Argument of Counsel.**—Where the issue on the trial was whether the acids conveyed by the defendant into the jail were useful to aid prisoners to escape therefrom, the district attorney in his argument suggested, "that it was a common practice to throw vitriol into the eyes of persons and blind them." *Held*, that though improper, the suggestion that acids could be utilized in more ways than one in effecting an escape, did not under the facts constitute reversible error.

4. **Requested Instructions not Warranted by Evidence.**—It is not error for the court to refuse a requested instruction when there is no testimony authorizing or requiring it.

5. **Evidence of Conspiracy.**—Where the evidence showed that the appellant had been confined in but released from the jail on the very day before he conveyed the bottles into the jail, *held*, that it was admissible for the purpose of showing an agreement and understanding between him and the prisoners, for the State to prove that he had been confined in the jail for months with said prisoners on a charge of felony.

APPEAL from the District Court of Williamson. Tried below before Hon. F. G. MORRIS.

The indictment charged appellant in two counts, one for conveying, and the other with causing to be conveyed into the county jail of Williamson County, two bottles containing nitric and muriatic acid, with intent to

facilitate and aid Will Ashe, George White, Abe McRae, Hugh Jackson, and J. P. Gibbs, prisoners therein lawfully confined on accusations of felony, to escape from said jail.

At his trial he was convicted, with his punishment assessed at a term of five years in the penitentiary. The following is the testimony, as found in the transcript of the record:

Jack Harwell, for the State, testified: My name is Jack Harwell. During the month of September, 1892, I was acting as jailer of Williamson County, Texas. I know the defendant Watson; have known him for several months. Previous to September 21, defendant had been confined in the Williamson County jail, charged with a felony, and was in the same cell with George White and Will Ashe. The defendant was released from jail sometime during the month of September, 1892, and on the morning following his release he came back to the jail and said he had some corn whisky for the boys. I told him he could not go into the jail, and he then asked me to give it to the boys. He handed one of the bottles to me, I think, and set the other on the safe in the guard room. I think I had unlocked the door leading from the guard room into the corridor around the cells, and was standing inside said door, when the defendant handed one bottle. (Two bottles containing liquid were here shown the witness, each being a half-pint whisky bottle, without label.) These look like the same bottles the defendant brought to the jail, and which I produced on the examining trial of this defendant. I recognize one of them by the cork inside of it. The liquid in one of the bottles looked clearer then than now. The one he handed me was the one that had the cork inside the bottle. I did not hand it to the boys, because its greasy look aroused my suspicion.

Cross-examined: The jail is divided into different departments. The first on entering is the guard room; it is used and occupied by the guards. There is a corridor some six or eight feet wide between the guard room door and the prison cells. The spaces between the iron bars to the cells are large enough to get bottles through. The liquid in the bottle with the cork in it is darker now than it was, or looks darker. I didn't know at the time what was in the bottles the defendant brought to the jail, and don't know yet. I have not had the bottles in my possession all the time since the alleged commission of the offense. The defendant came to the jail at the time he brought the bottles for his razor, and took the razor away with him.

Redirect: I did not convey the bottles in to the prisoners, because I didn't think they contained whisky. Prisoners were sometimes kept in the guard room to the jail. The guard room is in and a part of the jail building. The entrance to the cells is through the guard room, and through the door from the guard room into the run-around. The outer

door of the guard room is an iron door. Subsequent to the alleged commission of the offense I made an examination of the cells in the jail, and found cuts on the inside of the bars, and also found a small spring or thin piece of steel, which looked like it might have been taken out of a boot or shoe.

Recrossed: It was a week, or perhaps more than a week, before I made an examination and found cuts and spring in the cells.

W. J. Clark, for the State: I am a licensed pharmacist. (Examined two bottles in evidence.) I would take the contents of the two bottles for nitric and muriatic acid. I have tested the contents of two bottles resembling these, which were handed me at the examining trial of this defendant, but can not swear that these are the same bottles. The bottle which has the cork inside is muriatic acid, or vitriol, as it is commonly called. Iron and steel are soluble in muriatic and nitric acid. I could cut an iron bar in two with them. I am not familiar with that kind of work, and do not know how the acids are applied, but they will cut iron if you continue to apply them to it. Prior to the defendant's examining trial I sold some nitric and muriatic acid to some one resembling the defendant, but I am not prepared to swear positively that he is the man. I think he is. The person I sold to was about the size of the defendant. I labelled one of the bottles I sold "nitric acid" and the other bottle "muriatic acid," and marked each "poison." I don't remember whether it was two or three ounces each of the acids I sold the man; think it was two. Would judge there is two ounces of liquid in each bottle.

Cross-examined: I think these are the same bottles of acids shown me on the examining trial of the defendant, but can't swear they are the same. I think the bottles contain nitric and muriatic acid, but would have to make further test before I can be positive. I sold some of said acids to a man resembling defendant a short time before defendant's examining trial. I could not identify the defendant on his examining trial as the party to whom I sold the acids. I have occasion to sell the acids to a great many men. I judge the muriatic acid by the color of the cork and the liquid. Nitric and muriatic acids combined make the strongest acids we have, and will burn almost anything but glass. I never saw them tested on iron or steel. Don't know how they are applied. It could be applied by dropping it a drop at a time on a bar of iron and then brushing the destroyed part away. I never saw any cutting of iron or steel with them. I know of them from using them as a pharmacist and from the standard authors.

Redirect: (Witness pours part of the contents of the two bottles together, and after mixing same and smelling of it, witness says): It is nitro-muriatic acid, composed of nitric and muriatic acid; that the bottles contain nitric and muriatic acid. (A piece of grass rope is placed in the two liquids, and is taken out without any apparent effect from the con-

tact.   Witness produces small vial of liquid before the court and jury.)
This vial contains nitro-muriatic acid; it was composed from a combination
of the contents of the two bottles shown me on the defendant's examining
trial.   (It was here admitted in evidence by the defendant that the parties
named in the indictment as prisoners were legally confined in jail, charged
with felonies, at the time it is charged in the indictment that they were
so confined.)

G. W. Foster, for the State:   My name is G. W. Foster, I am a prac-
ticing physician.   Prior to the defendant's examining trial, I started to
wait on a man in Nichols' drug store, who called for muriatic acid, but
before I had gotten the acid for him, the witness Clark came forward to
wait on him.   The man who called for the acid resembled the defendant,
but I am not positive he is the man.   I asked the man how he expected
to use the acid, but if he made any reply at all, I failed to hear it.   Nitric
and muriatic acid will dissolve iron and steel.

Cross-examined:   It would take a considerable quantity of nitro-muri-
atic acid to dissolve a bar of iron.   I think muriatic acid alone would dis-
solve iron or steel.   It would take continual application of the acid to
cause them to dissolve iron or steel.   I have never seen the application
of the acids to either iron or steel.   I have been in the Williamson County
jail professionally.   Some eight or ten bars would have to be cut in the
cells to allow a man's body to get through.   The spaces between the bars
of the cells are not too small to get a man's hand through.   There is some
six or eight feet of open space between the door of the guard room and
the cells in which the prisoners are kept.   Tinners often use nitric and
muriatic acids in soldering, and I think they are used by other mechanics
for mechanical purposes.

No briefs have come to the hands of the Reporter.

SIMKINS, JUDGE.—Appellant was convicted of the offense of aiding
prisoners to escape, and his punishment assessed at five years in the peni-
tentiary, from which judgment he appeals to this court.

1.   The jury found, upon satisfactory evidence, that the appellant did
convey into the jail two bottles of muriatic and nitric acid, and the pur-
pose was to aid certain prisoners therein confined upon charges of felony
to escape from custody.   But appellant claims that the court erred in per-
mitting the witness Harwell to testify, that a week after this offense a
steel spring was found in the jail, and cuts were discovered on the iron
and steel bars to the cells.   The court expressly charged the jury, that
such testimony was admitted only for the purpose of showing the inten-
tion of the prisoners of effecting an escape, for which the acid might be
utilized, and not to show that the prisoner had conveyed the steel spring
into the jail, for he was not charged with it.   The jury could not have

been misled, because the jailor stated that defendant himself had been confined in jail several months on a felony charge, and on the morning after his release had brought the acids to the jail. There was no error in admitting the evidence.

2. There was no error in permitting the witness Clark, who qualified himself as a pharmacist, to testify as to the contents of the bottles, and to satisfy himself by a practical test of their contents; and we think they are reasonably shown to be the same bottles sold by him to defendant, or a person witness thinks was defendant, which then contained muriatic and nitric acid, and upon trial were found to have the same contents.

3. The appellant complains, that the district attorney was allowed to suggest to the jury in argument, "that it was a common practice to throw vitriol in persons' eyes and blinding them," and thereby showing how the acids may have been applied. While this was certainly improper in an argument, yet we can see no reason for reversing because of the suggestion that the acids may have been utilized in more ways than one in effecting an escape. The issue was, whether or not the acids, if conveyed by the defendant into the jail, were useful in aiding prisoners to escape therefrom. The State proved that it was useful in one way, and the district attorney suggested another.

4. The court did not err in refusing to charge the jury, that if the defendant only carried the acids into the reception or guard room, and it was separated from the jail, the defendant would not be guilty, first, because there was no testimony requiring or authorizing such a charge. The witness Harwell stated that the "jail" is divided into different apartments; that he had unlocked the door leading into the corridor, when appellant (who was in the guard room) handed him a bottle of the acid, requesting him to give it to the boys, and stating it was whisky.

5. The appellant complains, that the court erred in allowing the witness Harwell to state that he (appellant) had been confined for months in the jail on a charge of felony, and had been released, because the same tended to prejudice the defendant in the minds of the jury. It was no doubt the object of the State to show there was an understanding between the appellant and the prisoners in jail. It proved he had been confined in the jail with them, and if the witness stated the cause of the imprisonment to be a felony charge, he also stated that he had been released, and thus leading the jury to understand he had been unjustly charged. We can not say appellant sustained any injury from this testimony.

The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.